## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CR-24-204-G** |
| | ) | |
| **MARQUIS POUNDS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Now before the Court is a Motion to Suppress (Doc. No. 28), filed through counsel by Defendant Marquis Pounds. The Government has responded in opposition (Doc. No. 30). On September 25, 2024, the Court conducted an evidentiary hearing on the Motion. Defendant appeared personally and through counsel, Kylee Johnson and Michael Johnson. The Government appeared through Assistant U.S. Attorney Stephen Hoch. The Court heard the testimony of Oklahoma County Sheriff's Office Deputy Christopher Flemming and Oklahoma City Police Department Sergeant Chanse Alexander.[1]

Upon consideration of the evidence and the parties' arguments, and as previously ordered (*see* Doc. No. 35), the Court denies the Motion.

### I.    *Relevant Standards*

"The purpose of a suppression hearing is 'to determine preliminarily the admissibility of certain evidence allegedly obtained in violation of defendant's rights under

---

[1] At Defendant's request, and without objection from the Government, the Court also considered the transcript of the preliminary hearing held on May 10, 2024, before Magistrate Judge Shon T. Erwin. *See* Doc. No. 27.

the Fourth and Fifth Amendments.'" *United States v. Maurek*, 131 F. Supp. 3d 1258, 1261-62 (W.D. Okla. 2015) (quoting *United States v. Merritt*, 695 F.2d 1263, 1269 (10th Cir. 1982)).  "'The proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search.'" *Id.* at 1262 (quoting *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009)).  The Government must then prove by a preponderance of the evidence that the search or seizure that occurred was lawful—e.g., that exigent circumstances or another exception to the warrant requirement existed or that the evidence sought to be suppressed was not "fruit of the poisonous tree."  *See United States v. Burciaga*, 687 F.3d 1229, 1230 (10th Cir. 2012); *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *see also United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021) ("Though the defendant bears the burden of proving whether and when the Fourth Amendment was implicated, the government then bears the burden of proving that its warrantless actions were justified by an exception." (alterations and internal quotation marks omitted)).

## II.    *Background*

As reflected in the officers' testimony and body-camera footage, on April 23, 2024, at around 9:10 a.m., Deputy Flemming was observing westbound traffic on Interstate 40, just west of Harrah Road, in a marked patrol vehicle.  After observing a blue Ford SUV travelling faster than the surrounding vehicles, Deputy Flemming attempted to pull behind the Ford to obtain an accurate speed reading with his in-car radar.  Once he did, the Ford began changing lanes, leading Deputy Flemming to activate his emergency lights.  The Ford then exited, ran a red light, turned south on Peebly Road, and ultimately returned to

Interstate 40 travelling eastbound. Deputy Flemming continued pursuing the Ford, travelling at speeds in excess of 100 mph. The Ford eventually entered the Kickapoo Turnpike from Interstate 40 and continued at speeds exceeding 100 mph.

The Ford soon exited at SE 29th Street and, traveling off the roadway and down an embankment, crashed into a drainage ditch. It is undisputed that the Ford was immobilized as a result, with an axle and at least one tire damaged. After crashing, Defendant, who was the driver and sole occupant, exited the vehicle and began to run on foot up a hill and away from his vehicle. Deputy Flemming saw Defendant about 40 yards from the Ford. Deputy Flemming followed on foot, drew his firearm, and commanded Defendant to stop. After the second issuance of a command, Defendant complied. He was ultimately apprehended approximately 40 to 60 yards from his vehicle.

Defendant was handcuffed and searched by Sergeant Alexander. Sergeant Alexander recovered 2.5 grams of marijuana from Defendant's front left pocket. As Defendant was being secured, law enforcement began to search the unlocked Ford.[2] During the search, law enforcement recovered from a void behind the glove box a duct-taped bundle which contained blue counterfeit M-30 fentanyl pills. The Ford was then impounded. After it arrived at the impound facility, the search of the vehicle resumed, and law enforcement recovered two more duct-taped bundles located under the rear seats. These bundles also contained blue counterfeit M-30 fentanyl pills.

---

[2] Although Sergeant Alexander testified that a door and the back hatch of the Ford were open, it is not clear from the record who opened those or at what point in the sequence of events they were opened. There is no dispute that the Ford's doors were unlocked, however.

Defendant was charged under state law with endangering others while eluding a police officer. Defendant was subsequently indicted in this Court for possessing fentanyl with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *See* Indictment (Doc. No. 14).

III.    *Discussion*

Defendant argues that the evidence obtained as a result of the search of his vehicle should be suppressed because the warrantless search violated his rights under the Fourth Amendment. The Government responds that Defendant lacks standing to challenge the search due to Defendant's having abandoned the vehicle and, even if he does have standing, the search was supported by one or more exceptions to the Fourth Amendment warrant requirement.

As explained by the Tenth Circuit, "[t]he Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Burgess*, 576 F.3d 1078, 1087 (10th Cir. 2009) (quoting U.S. Const. amend. IV). "'It is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Id.* (alteration omitted) (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).

To bring a Fourth Amendment challenge, "a person must have a reasonable expectation of privacy" in the property searched. *Chavez*, 985 F.3d at 1240 (internal quotation marks omitted). A warrantless search of abandoned property is not unreasonable,

however, "because when individuals voluntarily abandoned property, they forfeit any expectation of privacy in it that they might have had." *Id.* (alteration and internal quotation marks omitted).

> Abandonment is akin to the issue of standing because a defendant lacks standing to complain of an illegal search or seizure of property which has been abandoned. The burden is on the government to establish abandonment by a preponderance of the evidence. The inquiry is one of intent and subsumes both a subjective and objective component.

*United States v. Quintana-Grijalva*, 332 F. App'x 487, 491 (10th Cir. 2009) (citations and internal quotation marks omitted); *accord Chavez*, 985 F.3d at 1240 ("A defendant lacks standing to complain of an illegal search or seizure of property which has been abandoned." (alteration and internal quotation marks omitted)).

The Court's abandonment test examines: "(1) whether the individual had a subjective expectation of privacy in the thing or place searched, and (2) whether the person had an objective expectation of privacy, one that society will recognize as reasonable." *Chavez*, 985 F.3d at 1240.

As to subjective intent, the Tenth Circuit has explained that an individual's "flight from" a vehicle "is clearly demonstrative of [the individual's] subjective intent." *Quintana-Grijalva*, 332 F. App'x at 491 (affirming finding that the defendant lacked a subjective expectation of privacy where the defendant jumped out of a car, left the doors open, and fled from agents on foot). That the individual "may have fled because of the [police officers'] presence has no effect on the Court's analysis." *United States v. Hunt*, No. CR-19-73-R, 2020 WL 2167185, at *2 n.1 (W.D. Okla. May 5, 2020) (citing *United States v. Flynn*, 309 F.3d 736, 738 (10th Cir. 2002)). The circumstances here plainly reflect

Defendant's subjective intent to abandon the Ford. Although Defendant emphasizes that his car keys were found in his pocket, that fact may simply mean that Defendant had the keys in his pocket while driving and did not take the time to discard the keys before attempting to run on foot. And the surrounding circumstances overwhelmingly indicate that Defendant had no intent to return to and reclaim the Ford. Defendant attempted to evade law enforcement officers while he was driving the Ford by leading the officers on a high-speed chase and repeatedly changing course. Then, when he crashed the Ford, and the officers' vehicles were approaching quickly, Defendant immediately ran on foot. This conduct reflects an active attempt to elude capture by the police even at the cost of losing a vehicle and cannot be reconciled with any expectation of returning to and reclaiming that vehicle.

Further, these same circumstances show that even if Defendant thought he might somehow retrieve the Ford or its contents at a later time, his action of deserting the unlocked vehicle at the bottom of the embankment and fleeing from police "relinquish[e]d" any objectively reasonable expectation of privacy. *Quintana-Grijalva*, 332 F. App'x at 492. "[W]hether a defendant harbored a desire to later retrieve an object allegedly abandoned is irrelevant to our analysis of the objective component." *Id.* at 491 (internal quotation marks omitted).

Courts in the Tenth Circuit and in other circuits have held that when a defendant flees his or her vehicle, the defendant loses standing to challenge the constitutionality of a warrantless search of that vehicle. *See, e.g.*, *id.* at 492 ("Quintana-Grijalva did not retain a reasonable expectation of privacy in the truck or any of its contents when he fled from the

truck, leaving the doors open and the marijuana (and other objects) inside."); *Hunt*, 2020 WL 2167185, at \*2 (denying suppression when the defendant "had fled his vehicle once law enforcement arrived on the scene"); *United States v. Falsey*, 566 F. App'x 864, 866-68 (11th Cir. 2014) (citing cases).  Here, likewise, Defendant "did not retain a reasonable expectation of privacy" in the vehicle and its contents "that society was willing to recognize."  *Quintana-Grijalva*, 332 F. App'x at 492.  Due to his abandonment of the vehicle, Defendant has not met his burden to show that the Fourth Amendment was implicated in the search.  *See Chavez*, 985 F.3d at 1240; *Eckhart*, 569 F.3d at 1274.  The Court need not reach the Government's alternative arguments as to why suppression should be denied.

## CONCLUSION

The Motion to Suppress (Doc. No. 28) therefore is DENIED.

IT IS SO ORDERED this 11th day of October, 2024.

CHARLES B. GOODWIN
United States District Judge